UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEAN MARIE HANSEN, ATTORNEY,
P.C.

        Plaintiff/Counter-Defendant,

                                  Case No. 00-70615

v.

                                  Honorable Patrick J. Duggan

DR. SAMIR CHACHOUA, and
ADELAIDA ORTEGA

        Defendants/Counter-Plaintiff.

_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AS TO COMPLAINT AND DENYING AS MOOT PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM

At a session of said Court, held in the U.S.
District Courthouse, City of Detroit, County of
Wayne, State of Michigan, on March 31,2006.

PRESENT:        THE HONORABLE PATRICK J. DUGGAN
                        U.S. DISTRICT COURT JUDGE

Plaintiff Jean Marie Hansen ("Hansen") initiated this lawsuit seeking attorney fees

from Defendants Samir Chachoua ("Chachoua") and Adelaida Ortega

("Ortega")(collectively "Defendants").[1]  Chachoua then filed a Counter-Complaint

against Hansen alleging professional negligence, negligent misrepresentation, and

_____

[1]This Court dismissed Hansen's claims against Ortega on February 2, 2004,
pursuant to an order granting Ortega's motion for summary judgment.

1

innocent misrepresentation.  Now before the Court is Hansen's motion for default

judgment filed on July 23, 2004, with respect to her Complaint and for dismissal as to

Chachoua's Counter-Complaint.  As the Court dismissed Chachoua's counterclaims on

September 30, 2004,[2] after the pending motion was filed, the Court will deny Plaintiff's

request for dismissal of those claims as moot.  For the reasons that follow, the Court will

grant Hansen's motion for default judgment with respect to the claims in her Complaint.

### Applicable Law

Rule 16(f) of the Federal Rules of Civil Procedure provides the sanctions a court

may impose if a party or party's attorney *inter alia* fails to obey a scheduling or pretrial

order, fails to appear at a scheduling or pretrial conference, or is substantially unprepared

to participate in the conference.  FED. R. CIV. P.  16(f).  These sanctions include "such

orders . . . as are just, and among others any of the orders provided in Rule 37(b)(2)(B),

(C), and (D)."[3]  Rule 37(b)(2)(C) sets forth the following sanctions: "[a]n order striking

out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or

dismissing the action or proceeding or any part thereof, or rendering a judgment by

default against the disobedient party."  FED. R. CIV. P.  37(b)(2)(C).  A court also may

---

[2]The Court dismissed Chachoua's counterclaims pursuant to an order granting a motion for summary judgment filed by Hansen.

[3]Rule 12(f) further provides that a court may alternatively or additionally require a party or his attorney to pay the reasonable expenses incurred because of any noncompliance with the rule, unless the judge finds that the noncompliance was substantially justified or that the other circumstances make an award of expenses unjust.

impose these sanctions against a party who fails to obey a discovery order or fails to provide or permit discovery.  FED. R. CIV. P.  37(b)(2).

The Sixth Circuit has recognized that a district court's power to dismiss an action "may be exercised with or without notice or opportunity to be heard, rests in the discretion of the trial court and is part of [a trial court's] inherent authority to prevent undue delays in the disposition of pending cases and to avoid congestion in its docket." *Mayle v. Ohio Power Co.*, No. 87-3582, 1988 WL 81266, *3 (6th Cir. August 4, 1988)(unpublished opinion)(citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-30, 82 S. Ct. 1386, 1388 (1962)).  In order to assess whether a district court abused its discretion in dismissing an action or entering a default judgment against a nonconforming party, the appellate court considers the following four factors in particular:

> (1) whether the party's failure to cooperate . . . is due to willfulness, bad faith, or fault; (2) "whether the adversary was prejudiced by the dismissed party's failure to cooperate . . ."; (3) "whether the dismissed party was warned that failure to cooperate could lead to dismissal"; and (4) "whether less drastic sanctions were imposed or considered before dismissal was ordered."

*Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 366-67 (6th Cir. 1997)(quoting *Reg'l Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 153-55 (6th Cir. 1988)).  When a party's dilatory tactics and disobedience persist through drawn-out litigation, the court may infer that the party has acted willfully and/or in bad faith.  *See id.* at 367.

3

**Relevant Factual Background**

This controversy stems from Hansen's representation of Chachoua as a plaintiff in a breach of contract and defamation action in the United States District Court for the Central District of California entitled *Chachoua v. Cedar Sinai, et al.* ("the California action").  In the California action, Chachoua alleged that he developed a vaccine and/or serum ("products") to cure the HIV virus and certain forms of cancer,  that he entered into an agreement with the defendants to store and test his products, that he therefore entrusted his products to the defendants, and that the defendants subsequently breached the contract and destroyed his products.  Judge Margaret M. Morrow presided over the California action.

As with the case before this Court, the California action was plagued with many discovery disputes and delays that caused the litigation to drag on for years.  When the California action was filed in 1997, Chachoua was represented by William Dailey.  On September 23, 1999, Chachoua substituted Hansen as his attorney of record.  Hansen served as Chachoua's attorney until January 18, 2000, when the California court granted Hansen's motion to withdraw and Chachoua obtained new counsel, Jerry Kaplan of the California law firm of Kaplan, Kenegos & Kadin (the "Kaplan firm").

Hansen's Complaint in the present matter involves the attorney fees she charged Chachoua for her four months of representation in the California action that he refuses to pay.  Chachoua's Counter-Complaint alleges that Hansen committed legal malpractice during this four month period.  Chachoua further alleges that after he replaced Hansen

4

with the Kaplan firm as his counsel in the California action, Hansen wrongfully retained

boxes of documents relevant to his claims in that case.

The proceedings in the California action are set forth in detail in this Court's

September 30, 2004 Opinion and Order dismissing Chachoua's Counter-Complaint.  As

noted in that Opinion and Order, Judge Morrow eventually dismissed the action on

November 13, 2001, due to Chachoua's "history of repeatedly disobeying court orders

and resort to other dilatory tactics" and his "pattern of misconduct [that] spanned the

tenures of several different attorneys who represented him below."  *See* September 30,

2004 Op. and Order at 6 n.4 (quoting *Chachoua v. Cedar Sinai, et al.*, Case No. 02-

56914, 2004 WL 515570 (9th Cir. March 16, 2004)(unpublished opinion)(affirming

Judge Morrow's dismissal of the California action).  As Judge Morrow stated in denying

Chachoua's motion to reconsider her dismissal of the California action, the central

reasons why the action was dismissed were:

> [Chachoua's] consistent refusal to comply with court orders
> regarding representation; his pattern of using medical excuses
> as a device to prolong the action unnecessarily, avoid
> appearances for deposition or other court proceedings, and
> obtain continuances at the last minute; and his pattern of
> substituting counsel in order to secure deadline extensions or
> continuances of potentially dispositive proceedings.

*See* Pl.'s Mot. for Default Judgment Ex. A at 11.  Reading the Ninth Circuit's opinion,

Judge Morrow's decisions in the California case, and the transcript of the  proceedings on

November 13, 2001, when Judge Morrow dismissed the action based on Chachoua's

failure to appear for the second trial,[4] the Court is struck by how similar Chachoua's dilatory tactics and manipulation of the judicial system have been in that action and the matter pending before this Court.

This Court entered a Scheduling Order in this case on November 20, 2000 setting the deadline for witness lists for March 31, 2001, the deadline for discovery for April 30, 2001, and the deadline for motions for May 15, 2001. The Court scheduled the Final Pretrial Conference for July 10, 2001.  Beginning early in this litigation, however, Chachoua has failed to cooperate in discovery and has engaged in misconduct that has prolonged these dates and this litigation extensively.[5]

For example, Hansen first noticed Chachoua's deposition for December 11, 2000, in Michigan.  Three days before the deposition was to take place, Chachoua filed a motion for a protective order seeking to change the location of the deposition.  The Court only received Chachoua's motion after the deposition was scheduled and so it therefore denied the motion as moot.  Meanwhile, Chachoua did not appear for the scheduled deposition.

Anticipating that Plaintiff would reschedule his deposition in Michigan, Chachoua filed another motion for protective order on December 27, 2000, seeking to change the

---

[4]*See* Pl.'s Mot to Dismiss/Motion for Summary Judgment, filed January 7, 2002, Ex. H.

[5]Hansen also has ignored some of the dates in the Court's Scheduling Order and has failed to comply with other rules of the Court; however, her transgressions are minor in comparison to those exhibited by Chachoua.

location of his deposition to either Guadalajara or Tijuana, Mexico or Melbourne, Australia (apparently the locations where he lives at various times throughout the year).[6] On February 27, 2001, Magistrate Judge Donald A. Scheer granted Chachoua's motion and issued a protective order mandating that Chachoua's deposition be taken in Tijuana, Mexico within 60 days of the date of the order.

Chachoua claims that he and Ortega thereafter appeared in Tijuana, Mexico for their depositions on April 26 and 27, 2001, but that neither Hansen nor her attorney appeared, called, or canceled the deposition.  Correspondence between Hansen's counsel and Chachoua's counsel prior to April 26, however, indicates that there never was an agreement for Defendants' depositions to occur on those dates.  Rather, on Monday, April 23, 2001, David Kadin of the Kaplan firm faxed a letter to Patrick Barrett of the law firm of Plunkett & Cooney (the firm defending Hansen against Chachoua's counterclaims), indicating that Defendants would appear in Tijuana, Mexico for their depositions on Thursday and Friday, April 26 and 27.  *See* 6/29/01 Op. & Order at 13; Hansen's Resp. filed 6/6/01 to Chachoua's Mot. for Sanctions, Ex. 12.  Barrett immediately responded that he was "not in a position to drop everything and fly to Mexico" by the end of the week.  *See* 6/29/01 Op. & Order at 14; Hansen's 6/6/01 Resp., Ex. 13.

According to Hansen, around the same time, Chachoua filed criminal charges of

---

[6]One reason Chachoua provided for seeking to move his deposition out of the United States was his belief that individuals in the United States were attempting to assassinate him.

extortion and attempted murder in Mexico against her, her former attorney, and the Mexican process server Hansen used to serve Ortega. Hansen claimed that the Mexican authorities already had picked-up and temporarily detained the process server for questioning. Fearing that she also would be arrested if she appeared in Mexico for Defendants' depositions, Hansen filed a motion with the Court seeking to change the location of the depositions. On June 19, 2001, this Court granted Hansen's motion and ordered Chachoua to produce documents requested by Hansen by July 19, 2001, and ordered Defendants to appear for their depositions in Los Angeles, California within 30 days of the document production, i.e. no later than August 19, 2001.

Kadin faxed a letter to Chachoua in Australia on July 11, asking Chachoua to arrange for someone to bring boxes containing documents potentially relevant to Hansen's discovery requests to his office. *See* Hansen's Mot. to Dismiss filed 8/20/01, Ex. 4. According to Kadin, Chachoua had not responded to his letter as of July 24. *See id*. In the meantime, however, Kadin located two boxes of documents in his own office from the California action. *See id*. Kadin was subsequently hospitalized for medical problems. *See id*. Due to his illness and the lack of a response from Chachoua, Kadin filed a motion with the Court asking for an extension of time to produce the requested documents and/or to schedule Defendants' depositions. The Court granted the motion, extending the date for Chachoua to respond to Hansen's discovery requests to August 1, 2001, and requiring Defendants' depositions to be conducted by the week of Labor Day.

Sometime before July 31, Kadin obtained nine additional boxes of documents

8

(some delivered by a representative of Chachoua).  *See* Hansen's Mot. to Dismiss filed

8/20/01, Ex. 4.  Kadin reviewed the documents and, on July 31 and August 1, sent three

boxes of documents to Barrett.  *See id*.  According to Hansen and her counsel, however,

these documents did not fully respond to their discovery requests.  *See id*., Ex. 5.

Additionally, Defendants' depositions did not take place before Labor Day.

Barrett sent Kadin a letter dated August 14, 2001, requesting dates for Defendants'

depositions by 5:00 p.m., Friday, August 17.  *See id*.  Barrett indicated that Hansen would

seek relief from the Court if alternative dates for the depositions were not provided by

that deadline.  *See id*.  Instead of receiving dates for Defendants' depositions, Barrett

received a letter from Kadin on August 16, indicating that on that date the Kaplan firm

was filing a motion to withdraw as Defendants' counsel.  *See id*, Ex. 6.  Kadin indicated

that he had informed Defendants that they still would be required to appear in Los

Angeles for their depositions the week of September 3 pursuant to the Court's order;

however he further indicated that Defendants thus far had failed to advise him of the dates

they would be available.[7]  *See id*.

_____

[7]Defendants subsequently claimed that they had appeared in Los Angeles the week of September 3 to be deposed, but that neither Hansen nor her attorney showed.  The record, however, clearly indicates that the exact date(s), time(s), and location of Defendants' depositions were never conveyed to Hansen and/or her counsel.  Additionally, Defendants' assertion is suspect in light of a letter Kadin received on August 16 from an individual named J.J. Little (who claimed to be Chachoua's general counsel) in which Little instructed Kadin to inform the Court that Ortega could not be deposed in Los Angeles because she did not have a visa to enter the United States.  *See* Hansen's Mot. to Dismiss filed 8/20/01, Ex. 6.

9

On August 20, 2001, Hansen filed a motion to dismiss and for sanctions based on Defendants' failure to comply with the Court's June 19, 2001 discovery order. The Court began hearing oral argument on Hansen's motion on September 18, 2001, and continued the hearing to September 25. Before that date, however, the parties reached an agreement providing that Defendants' depositions would be conducted from October 23 through 26, 2001, in Los Angeles. The Court therefore denied Hansen's motion to dismiss.

Defendants' depositions, however, did not occur in late October as a result of further dilatory tactics by Chachoua. A short time before October 23, Kadin informed the Court that Chachoua suffered from medical ailments that rendered him incapable of being deposed. *See* Hansen's 1/7/02 Mot. to Dismiss/Mot. for Summ. J., Ex. K & Ex. N. At the same time, Chachoua sought to have new counsel, Stanley Lieber, take over his case. *See id*, Ex. M. Kadin, who the Court still had not relieved as Chachoua's counsel, advised the Court that Chachoua was unable to attend his October 25 and 26 deposition because he was hospitalized in Mexico. *See id.* Kadin provided the Court with declarations from Chachoua and three other individuals attesting to Chachoua's condition: a chemist/pharmacologist named O. Poblano, a physician named B. Alicia, and another physician named Dr. Manuel Noriega. *See id*.

In response to the information provided by Kadin, this Court faxed a letter to Kadin on November 1, 2001, asking him to immediately advise the Court of the following information: where Chachoua was; if hospitalized, the name and location of the hospital; and the current state of his health. *See id*., Ex. O. Lieber responded to the Court's

10

inquiry on November 2, indicating that he would be replacing Kadin as Chachoua's counsel[8] and would provide an update with regard to Chachoua's current health status and location "upon receipt of the information requested." *See id.*, Ex. P. Lieber promised to "do what [he] [could] to make [Defendants] available as soon as possible [for their depositions]." *See id.*

On November 8, 2001, Lieber sent another letter to the Court, indicating that Chachoua's medical condition remained unchanged and he was currently hospitalized. *See id*, Ex. Q. Lieber attached Dr. Noriega's and Dr. Alicia's earlier declarations to his letter. *See id.* Lieber indicated that he would provide the name and location of the hospital to the Court, but only *in camera* due to death threats received by Chachoua over the course of the litigation. *See id.*

Lieber in fact never revealed the name of the hospital where Chachoua allegedly was admitted and the case continued to be plagued with delays over the next several months. On January 7, 2002, Hansen filed a motion to dismiss/for summary judgment pursuant to Rule 37 based on Chachoua's discovery abuses. The Court scheduled a show cause hearing for May 7, 2002 to address Hansen's motion.

At the May 7 hearing, the Court concluded that there was insufficient information to determine whether Hansen's inability to depose Chachoua was a result of willful

---

[8]Although Lieber attached a substitution of attorney form to his letter, the Court refused to allow the Kaplan firm to withdraw from the case at that time. In February 2002, the Court eventually allowed Lieber to substitute for the Kaplan firm as Chachoua's counsel.

misconduct by Chachoua.  The Court also found insufficient information in the record to conclude that Chachoua was feigning his alleged medical ailments.  For these reasons, and because Chachoua now was represented by different counsel, the Court denied Hansen's motion and suggested that the parties attempt to work out their discovery issues over the next few months.

By the Fall of 2003, however, the parties still were quarreling over discovery issues.  Concluding that these issues never would be resolved, the Court found no reason to delay a trial of the parties' claims any further.  The Court therefore scheduled a Final Pretrial Conference for Tuesday, October 28, 2003.  In its letter to counsel informing them of the Pretrial Conference, the Court indicated that Chachoua did not need to appear for the conference but that he had to be available by telephone if his input became necessary.

Less than one week before the Pretrial Conference, Lieber filed a motion to withdraw as Chachoua's counsel.  *See* R. 227.  Lieber cited Chachoua's lack of cooperation and communication as the reason for his need to withdraw and indicated that, under the circumstances, he could not prepare Chachoua's witness and exhibit lists.[9]  *See id*. Lieber further indicated that there was an additional reason he was seeking to withdraw, but that he could not state the reason without disclosing confidential

---

[9]Chachoua previously filed a witness and exhibit list; however as the Court informed Chachoua, the list did not comply with the Court rules as it basically was a telephone directory list of names.

12

information.  *See id.*  The Court informed Lieber that he would be required to attend the Pretrial Conference despite his motion.

At the Pretrial Conference, it became apparent to the Court that the breakdown in communication between Lieber and Chachoua would make it impossible to move the case forward.  The Court refused to allow Lieber to immediately withdraw, however, for two primary reasons.  First, Chachoua claimed that Lieber had boxes of documents that Chachoua needed to prepare his case for trial.  The Court believed that Lieber would more likely return the documents if he knew that he only could withdraw once he did so.  Second, the Court wanted suitable witness and exhibit lists from Chachoua.  Therefore the Court ordered Lieber to file these lists within ten days.[10]

On November 7, 2003, Chachoua filed a document entitled "Witness and Exhibit List," which like his earlier submission failed to comply with the Court's rules.  On February 6, 2004, the Court scheduled a hearing for April 5, 2004, to continue the Pretrial Conference.  *See R.* 235.  The Court firmly stated in its notice that Chachoua, Hansen, and Hansen's counsel needed to attend the hearing in person.  *See id.*  The Court further warned: "The Court is giving the parties ample notice so that they may adjust their schedules accordingly.  Failure of any party to attend this conference will result in appropriate sanctions which may include dismissal of the action and/or default judgment."  *See id.*

---

[10]Lieber indicated that he in fact had prepared an exhibit list and witness list prior to the Pretrial Conference, but Chachoua would not allow him to file the lists.

13

During the next several months, Chachoua inundated the Court with lengthy motions and letters complaining about misconduct by Lieber (including his continued failure to return Chachoua's documents), Hansen, and Ellen Bartman Jannette (the primary attorney from Plunkett & Cooney representing Hansen). Chachoua stated in these communications that he no longer wanted Lieber to represent him.[11] Despite his numerous submissions to the Court over this period, it was not until March 26– ten days before the Pretrial Conference– that Chachoua informed the Court that he would not be able to attend the hearing because it conflicted with "religious events" (i.e. the Jewish holiday of Passover). Although the Court previously indicated that it would no longer extend any dates in this action, the Court agreed to reschedule the hearing for May 3 since Chachoua cited a religious reason for his request. *See* R. 244. The Court made it clear to Chachoua, however, that he needed to attend the May 3 hearing personally and that failure to do so would result in appropriate sanctions. *See id.*

Chachoua appeared at the May 3 Pretrial Conference; although he claimed he was too ill to fully participate in the conference and a subsequent trial. Chachoua told the Court that he in fact had been hospitalized from the beginning of the year until a few weeks prior to the hearing due to a life threatening condition. *See* 5/3/04 Hrg. Tr. at 35-36. In response to Hansen and her counsel's concerns about Chachoua's assertions, the

---

[11]The Court informed Chachoua that he could obtain new counsel to represent him or proceed pro per, but that either way, the Court would not extend any further dates in the proceedings.

14

Court ordered Chachoua to produce his medical records (not a summary) from January 2004 through the date of the hearing to support his claim of ill health.  *See id*. at 60; 5/4/04 Hrg. Tr. at 19.  The Court also ordered Chachoua to appear the following day for an Independent Medical Examination ("IME") by a physician chosen by Hansen.  The Court ordered Chachoua to remain in Michigan until the IME was completed and his medical records were produced.  *See, e.g.,* 5/4/04 Tr. at 14 & 16-17.

The parties returned to Court the following morning because Chachoua failed to comply with the Court's instructions.  According to Jannette, she had arranged for Dr. Howard Schubiner to conduct an IME of Chachoua that morning.  *See* Hansen's Mot. for Default J. filed 7/23/04, Ex. E ¶ 10.  Jannette claimed that she then informed Chachoua that Dr. Schubiner would be available until 10:30 to perform the IME and that Chachoua should advise her, when he knew, as to the time he could arrive at the doctor's office.  *See id*. Chachoua, however, never contacted Jannette to give her this information and Dr. Schubiner no longer was available to perform the IME.  *See id*.  Jannette therefore had arranged for Dr. Leon Pedell to conduct the IME at 4:00 that afternoon at Jannette's offices on Woodward Avenue in Bloomfield Hills, Michigan (approximately 22 miles from the courthouse).  *See id*. ¶ 11.

Chachoua arrived at counsel's office at 4:20 for the scheduled IME, complaining of an inability to walk, heavy breathing, and chest pain.  *See id*. ¶ 14; Mot. at 14.  An emergency response team was called and Chachoua was transported to St. Joseph Mercy Hospital in Pontiac, Michigan.  *See id*.  However at 9:00 the following morning, when

15

Jannette contacted the hospital to determine Chachoua's medical status, he no longer was there. *See id.* ¶ 15. According to the hospital, Chachoua left the hospital the previous evening without being admitted. *See id.*

Jannette then attempted to contact Chachoua through the various phone numbers he had provided as his "contact" numbers in Michigan, with no success. *See id.* ¶¶ 16-23. Jannette also left several messages on the voicemail at Chachoua's Michigan hotel room. *See id.* In the meantime, the Court continued the Pretrial Hearing until 10:00 a.m. on May 20, 2004. Chachoua never returned Jannette's messages and he failed to appear in court on May 20. Chachoua also made no attempt to contact the Court before he subsequently returned to Mexico.

**Analysis**

Chachoua's conduct in the present action is identical to that exhibited in the California action: he has failed to abide by the Court's orders, has attempted to secure last minute continuances, has engaged in last minute substitutions of counsel in order to avoid court deadlines, and has failed to appear or sought a delay in the proceedings on the basis of unsupported medical problems and/or medical emergencies. Chachoua claims that he was seriously ill and hospitalized from the beginning of January 2004 until a few weeks before the May 3 Pretrial Conference, however, he has not provided the Court with his medical records for that period. He has refused to sign a waiver to allow Hansen to obtain his records from the Mexican hospital where he allegedly was treated during the early months of 2004 or from St. Joseph Mercy Hospital where he was treated on May 4.

16

When ordered to submit to an IME to prove his poor health, Chachoua claimed that he

needed to go to a hospital; but then he left the hospital before being admitted (and perhaps

even treated) and failed to inform the Court or the other side of his subsequent

whereabouts.

The declarations Chachoua has offered from himself, Dr. Noriega, and Dr.

Kabisch to support his claims of ill health in the pending matter in fact are the same

declarations he offered in the California action to demonstrate that he was too ill to attend

those proceedings.  When presented with Dr. Noriega's and Chachoua's declaration,

Judge Morrow was not impressed, stating:

> Given the pattern of raising medical excuses for inability to
> appear for required court proceedings in this case . . . the
> court finds Dr. Chachoua's declaration filed in support of the
> motion for continuance - - a further continuance of the trial
> not credible.  The court similarly finds not credible the
> declaration filed by Dr. Manuel Noriega.
> Dr. Noriega was a witness at the first trial of this case.  He
> testified on behalf of [Chachoua].  He testified, as the court
> recalls, that he has treated patients with Dr. Chachoua's sera
> and/or vaccines.  He appears to be an individual, based upon
> the court's consideration of his prior testimony and the overall
> circumstances of this case, who is biased in favor of Dr.
> Chachoua and who will make himself available to support Dr.
> Chachoua's assertions and arguments in the context of this
> case.
> . . .
> The court is particularly not persuaded by the declarations
> filed by Dr. Chachoua and Dr. Noriega for the following
> additional reasons: The surfacing of the alleged medical
> condition which necessitates a continuance of the trial
> occurred only after requests were made to continue the trial ...

*See* Hansen's Mot. to Dismiss/Mot. for Summary Judgment, filed January 7, 2002, Ex. H

17

at 11-12.  As Judge Morrow further noted with respect to the same declaration by Dr.

Noriega when she denied Chachoua's motion for reconsideration, Chachoua "provides no

information . . . regarding [Dr. Noriega's] medical training, his areas of expertise, or his

background in diagnosing such conditions [as those allegedly suffered by Chachoua] . . .

Nor does he state what tests or examinations he performed beyond merely observing

plaintiff in his hospital bed."  *See* Hansen's Mot. for Default Judgment, Ex. A at 8.  Judge

Morrow dismissed Dr. Kabisch's[12] declaration for the same reasons.  *See id.*  Judge

Morrow further noted that Dr. Kabisch's declaration had not been provided on the day set

for trial (the day Dr. Kabisch claimed he examined Chachoua and diagnosed him as

severely ill), but instead was submitted several months later to support Chachoua's

motion for reconsideration.  *See id.*  Judge Morrow wrote: "The belated presentation of

Dr. Kabish's [sic] declaration and its lack of detail undermine its credibility."  *See id.*

　　　The declarations of Dr. Noriega, Dr. Alicia, Dr. Kabisch, and Mr. Poblano

presented in the pending matter also lack sufficient detail to enable this Court to

determine their credibility.  In fact, due to the absence of particular information in regard

to these individual's training, education, employment, and/or experience, the Court

cannot even be satisfied that these individuals hold the positions they claim or that these

_____

　　　[12]Judge Morrow spelled the doctor's name as "Kabish" rather than "Kabisch,"
although the judge clearly is referring to the same individual.  It is not clear whether this
was a misspelling by Judge Morrow or whether the individual who prepared the
declaration spelled the name differently.  Alternatively, the doctor's name may have been
misspelled in the affidavit provided to this Court.

individuals even exist.  Additionally, the Court finds it curious that Dr. Kabisch allegedly examined Chachoua and believed that he was seriously ill during the period of May 3 through May 5 (when the Court ordered Chachoua to participate in the Pretrial Conference), but Chachoua never attempted to offer his declaration nor his testimony to the Court at anytime during the May 3 or 4 hearings.

As a result of Chachoua's refusal to provide credible evidence of his medical condition and hospitalization and submit to an IME,  the Court only can conclude that he has feigned his illnesses in order to delay these proceedings.  Further supporting this conclusion is the fact that when Chachoua sought to delay the Pretrial Hearing originally scheduled for April 5, he never mentioned that he currently was hospitalized for an acute life threatening illness and that he had been hospitalized since the beginning of the year. Chachoua only claimed that he could not attend the hearing because it conflicted with a religious holiday.  Additionally, during his alleged hospitalization for an acutely life threatening illness, Chachoua deluged the Court with lengthy letters and motions.  As Judge Morrow noted in assessing Chachoua's claim of illness during a period when he also filed hundreds of pages of pleadings in the California action, this is not activity expected of somebody who allegedly is on his or her death bed.

The history of Chachoua's dilatory tactics and disobedience in this case, as well as his similar if not identical behavior in the California action, convince this Court that his conduct is willful and in bad faith.  If Chachoua had one attorney representing him in this case, perhaps the Court could blame some of the discovery abuses and delay on a failure

of counsel to cooperate or communicate.  Yet Chachoua has been represented by two different attorneys in this case and at least six attorneys in the California action.  Thus the Court only can conclude that Chachoua alone is the source of the disobedience and delay.

The present action, like the California action, has dragged on for years as a result of Chachoua's misconduct.  As a result, like the California action, the pending matter is one of the oldest cases on this Court's docket and its has consumed an excessive and unnecessary amount of this Court's time and energy.  Hansen and her counsel have been prejudiced by Chachoua's failure to cooperate.  They have expended far too much time and energy on this litigation and Hansen has waited far too long to have her claim resolved.  Chachoua was warned repeatedly that his failure to appear at the Pretrial Conference, prepared for trial, would result in sanctions, including dismissal and/or default judgment.  The Court imposed sanctions early in this litigation against Chachoua, as did Judge Morrow in the California action; clearly such sanctions have no impact on Chachoua.

The Court therefore concludes that default judgment is an appropriate sanction for Chachoua's behavior in this litigation.

## Damages

In her motion for default judgment, Hansen seeks a judgment in the amount of $177,573.90, together with interest and costs in the amount of $10,066.86 and an unspecified amount of attorney's fees.  The Court's determination that Hansen is entitled to a judgment by default, however, does not necessarily mean that she is entitled to the

amount of damages requested in her complaint or motion.  As the Sixth Circuit has stated:

"'Where damages are unliquidated a default admits only defendant's liability and the

amount of damages must be proved.'"[13]  *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110

(6th Cir. 1995)(quoting *Fehlhaber v. Fehlhaber*, 681 F.2d 1015, 1026 (5th Cir. 1982)(en

banc)); *see also Kelley v. Carr*, 567 F. Supp. 831, 841 (W.D. Mich. 1983)("A default

judgment on well-pleaded allegations establishes only defendant's liability; plaintiff must

still establish the extent of damages.  Rule 55(b) provides:

> If, in order to enable the court to enter judgment or to carry it
> into effect, it is necessary to take an account or to determine
> the amount of damages . . . the court may conduct such
> hearings or order such references as it deems necessary and
> proper . . .

FED. R. CIV. P.  55(b)(2).

In light of the history of this litigation, the Court will not attempt to conduct a

hearing regarding Hansen's damages.  Additionally, the Court does not believe a hearing

is necessary to evaluate the reasonableness of the fees and costs Hansen charged

Chachoua in the California litigation.  Instead, the Court will order Hansen to submit

evidence (for example, affidavits and billing records supporting the attorney's fees and

costs she claims are due from Chachoua based on the California litigation) within twenty

---

[13]As the First Circuit has explained, "'[l]iquidated means adjusted, certain, settled
with respect to amount, fixed.  A claim is liquidated when the amount thereof has been
ascertained and agreed upon by the parties or fixed by operation of law.'"  *KPS Assoc.,
Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 20 (2003)(quoting *Farm Family Mut. Ins. Co.
v. Thorn Lumber Co.*, 501 S.E.2d 786, 791 (W. Va. 1998)).

21

days of the date of this Opinion and Order.  If Chachoua wishes to dispute Hansen's

evidence, he must do so in writing within twenty days of receiving service of Hansen's

submissions.

      Accordingly,

      **IT IS ORDERED**, that Plaintiff's Motion for Default Judgment is **GRANTED**;

      **IT IS FURTHER ORDERED**, that Plaintiff's Motion to Dismiss the

Counterclaim is **DENIED AS MOOT**;

      **IT IS FURTHER ORDERED**, that Plaintiff must submit evidence to support the

amount requested in her Motion for Default Judgment within twenty days of the date of

this Opinion and Order; Defendant shall respond to Plaintiff's submissions, if he so

chooses, within twenty days of receiving service of Plaintiff's submissions.

                          s/PATRICK J. DUGGAN
                          UNITED STATES DISTRICT JUDGE

Copies to:
Jean Marie Hansen, Esq.
Dr. Samir Chachoua
Ellen Bartman Jannette, Esq.
Thomas M. O'Leary, Esq.